**ARK–MO FARMS, INC.**

v.

**The UNITED STATES.**

**No. 325–72.**

United States Court of Claims.

Feb. 18, 1976.

James T. Gooch, Arkadelphia, Ark., atty. of record, for plaintiff. J. Hugh Lookadoo, Jr., and Lookadoo, Gooch & Lookadoo, Arkadelphia, Ark., of counsel.

John E. Lindskold, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and KUNZIG, Judge.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's exceptions to the recommended decision of Trial Judge David Schwartz, filed March 31, 1975, pursuant to Rule 134(h), having been submitted to the court on oral argument and the briefs of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth *, it hereby affirms and adopts the decision as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is not entitled to recover and the petition is dismissed.

SCHWARTZ, Trial Judge:

Plaintiff, the owner from 1965 to 1974 of a 10,000 acre farm on the Arkansas River in Jefferson County, Arkansas, sues for the taking by the United States of a part of the value of the farm by flooding allegedly the consequence of the April 1, 1968 closing of Dam No. 2 of the McClellan-Kerr Arkansas River Navigation System, some 12 miles below the farm. The action fails, for reasons set out in detail in the findings and here summarized briefly.

The System, authorized by the River & Harbor Act of 1938, 52 Stat. 1215, 1218, is a multi-purpose project on the Arkansas River, whose primary purpose is the creation of a navigation channel from above Tulsa, Oklahoma through the Arkansas River past the plaintiff's farm to the White River and on to the Mississippi. The project includes a number of flood control structures, all upstream from plaintiff's farm. Dam No. 2, located 12 miles below the farm, maintains a navigation pool to a constant elevation.

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his opinion filed March 31, 1975, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

Plaintiff bought the farm in 1965, cleared the woodland on it and in 1967 planted and harvested a good crop of soybeans. Beginning in 1968, the farm suffered floods of varying severity in each year through 1973, the last year as to which evidence was given at the trial. The floods caused substantial damage to crops. The foregoing was plaintiff's entire proof.

■ No proof was made that Dam No. 2 or any other consequence of the project was the cause of the floods complained of. This failure of proof would alone dispose of plaintiff's case.

Evidence presented by defendant demonstrated that 1965, the year in which plaintiff bought the farm, was the midpoint of a severe drought extending from 1963 to 1967, and that the floods in 1968 and thereafter were no more frequent or severe than the floods in the pre-drought years before 1963. It appeared, too, that the soil on plaintiff's farm was composed of an impermeable clay which would retain rainfall, and create flood conditions at times when there was no hydrological data of floods in the water-courses bordering the farm.

In addition, detailed and unchallenged hydrological data was put in evidence by the defendant showing that the project had in fact decreased peaks, duration and frequency of floods at the farm. The dams and reservoirs upstream from the farm have, it appears, retained peak floodwater, allowing it to flow downstream over longer periods than otherwise. The consequence has been an increase in the duration of water elevations at lower levels and a decrease in peaks, duration and frequency of high level floods. It is a case of at most "little injury in comparison with far greater benefits conferred." *United States v. Sponenbarger,* 308 U.S. 256, 267, 60 S.Ct. 225, 229, 84 L.Ed. 230, 238 (1939).

The hydrological evidence took the form of a study prepared by the Government's expert witness, a hydraulic engineer and chief of the Hydrological Engineering Division, Hydraulics Branch, of the Little Rock District of the Corps of Engineers. The farm is located in the Little Rock District. The basic data for the study had been gathered, in regular course, throughout the project. The calculations relating to the area of the farm had been performed by the witness; other parts of the calculations had been performed by comparable professionals in a neighboring district of the Little Rock District. The study and the expert's conclusions on the basis of the data were furnished to plaintiff in pretrial proceedings, in sufficient time for plaintiff to prepare to respond to it. At trial, the expert, on the stand, interpreted and explained the data and the calculations and their significance for the case at hand. The testimony went unchallenged. Plaintiff did not cross-examine on any material matter, and did not present any hydrological evidence.

■ The study and the amplifying testimony were admitted in evidence over the objection that the data was gathered and the calculations made, at least in part, by members of the Corps of Engineers not present in court. It would stultify legal proceedings and deny good sense to condition the receipt of this evidence on the presence in court of the numerous technicians and engineers who necessarily participate in the creation of a hydrological study of the effects of a vast river basin flood control project on a particular area. The engineering techniques employed, testified to by the highly qualified witness who did appear, are sufficient guarantee of reliability to warrant admission under a liberal interpretation of the classic shop-book hearsay exception. *Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co.,* 18 F.2d 934, 937–38 (2d Cir. 1927); 5 Wigmore on Evidence § 1530 (1974); McCormick on Evidence §§ 310–312 (1972).

To the extent that the evidence may not be admissible under the shop-book exception, it is admitted pursuant to the residual discretion of a trial court in a non-jury case to admit into evidence hearsay found to be the best evidence

reasonably available and to have assurances of accuracy and reliability. *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388, 398 (5th Cir. 1961); *United States v. 25.406 Acres of Land*, 172 F.2d 990, 995 (4th Cir.), *cert. denied*, 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738 (1949), 5 Moore's Federal Practice ¶ 43.-02[3] at 1316, (2d ed. 1974). Such residual discretion is codified in the new Federal Rules of Evidence, effective July 1, 1975. Rules 803(24), 804(b)(5), 88 Stat. 1926, 1942, 1944 (1975), 28 U.S.C.A. App.; see S.Rep. No. 93–1277, 93d Cong., 2d Sess. 18–20. The findings upon which these rules condition admissibility have been made in the findings.

Plaintiff is not entitled to recover.

## CONCLUSION OF LAW

Upon the findings of fact and the foregoing opinion, which are adopted by the court and made a part of its judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the complaint is dismissed.